```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

----------------------------X
                             :
UNITED STATES OF AMERICA,    :    94-CR-1119 (RR)
                             :    95-CR-1155 (RR)
          v.                 :
                             :    June 28, 1996
LARRY SESSA, et al.,         :
                             :    Brooklyn, New York
              Defendants.    :
                             :
----------------------------X

          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
            BEFORE THE HONORABLE REENA RAGGI
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:           ZACHARY W. CARTER, ESQ.
                              UNITED STATES ATTORNEY
                              BY: ELLEN CORCELLA, ESQ.
                                  SUNG-HEE SUH, ESSQ.
                              ASSISTANT U.S. ATTORNEYS
                              271 Cadman Plaza East
                              Brooklyn, New York  11201


For the Defendant:
McGlaughlin                   BRUCE CUTLER, ESQ.
Sessa                         EPHRAIM SAVITT, ESQ.
Capaldo                       MICHAEL GOLD, ESQ.
Savarese                      NICHOLAS KAISER, ESQ.
Santapeola                    VINCENT ROMANO, ESQ.
Gargagliano                   ALAN FUTERFAS, ESQ.
Tagliavia                     DONNA NEWMAN, ESQ.


Audio Operator:               LOURDES VAZQUEZ

Court Transcriber:            ARIA TRANSCRIPTIONS
                              c/o Elizabeth Barron
                              102 Sparrow Ridge Road
                              Carmel, NY 10512
                              (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

```
 1              THE CLERK:  United States versus Sessa, et al.

 2              Counsel, we're recording this electronically, so

 3    it would be helpful if you identified yourselves for the

 4    court reporter.

 5              For the United States?

 6              MS. CORCELLA:  Ellen Corcella and Sung-Hee Suh.

 7              THE COURT:  For the defendant Thomas McGlaughlin?

 8              MR. CUTLER:  Bruce Cutler.

 9              THE COURT:  For the defendant Daniel Capaldo?

10              MR. GOLD:  Michael Gold.

11              THE COURT:  For the defendant Joseph Savarese?

12              MR. KAISER:  Nicholas Kaiser for Richard Levitt.

13              THE COURT:  For the defendant Larry Sessa?

14              MR. SAVITT:  Ephraim Savitt.

15              THE COURT:  For the defendant Dean Gargagliano?

16              MR. FUTERFAS:  Alan Futerfas.

17              THE COURT:  For the defendant Santapeola?

18              MR. ROMANO:  Vincent Romano.

19              THE COURT:  For the defendant Peter Tagliavia?

20              Ms. Newman had called and she was stuck in

21    traffic, so she's somewhat delayed.  What I'd like to do

22    this morning is proceed to sentence in these cases.  Let me

23    say preliminarily that with some defendants, the Court will

24    have to either upwardly or downwardly depart to accept the

25    11E1C plea agreements that were reached in this case.  These
```

1    were global agreements.

2            I am persuaded from the submissions that have been

3    given to me that it is appropriate to accept those

4    agreements, so unless anyone specifically wants to be heard

5    further, I will just echo some of what you all have put in

6    your written submissions to me as to why I'm doing that when

7    I come to the defendants who particularly require downward

8    departures.

9            To accommodate the Marshals, I would like to

10   sentence as much as possible those defendants who are

11   incarcerated first.  So if I could start with Mr.

12   McGlaughlin.

13           Mr. McGlaughlin and Mr. Cutler, do you want to

14   step forward?

15           Mr. Cutler, preliminarily let me ask you, have you

16   had an opportunity to see the presentence report, the

17   addendum to it, the letters written by the government, and

18   to discuss all of these with your client?

19           MR. CUTLER:  I have, Your Honor.

20           THE COURT:  Mr. McGlaughlin, have you seen the

21   presentence reports in this case, the letter the government

22   has written to the Court and had enough time to talk this

23   all over with your lawyer?

24           THE DEFENDANT McGLAUGHLIN:  Yes, Your Honor.

25           THE COURT:  If I understand the correspondence

1   I've received in Mr. McGlaughlin's case, there do not appear

2   to be any factual challenges to the report, is that correct?

3              MR. CUTLER:  That's true, Your Honor.

4              THE COURT:  And the only legal issue is really

5   this question of departure.  Am I also correct on that?

6              MR. CUTLER:  Yes, Your Honor, with one caveat.  I

7   wanted to indicate we had a general objection to a criminal

8   activity that's been ascribed to Mr. McGlaughlin other than

9   what he's pleaded guilty to either here or in the state

10  court.  I'm not contesting it or asking for a hearing.  I

11  just wanted to make a general objection to it on the record

12  before you, without going further.

13             THE COURT:  But you don't want a hearing.

14             MR. CUTLER:  No, I don't, Your Honor.

15             THE COURT:  Then I will not adjust the report.

16             MR. CUTLER:  I appreciate that.

17             THE COURT:  What I had started to say was, Mr.

18  McGlaughlin fits into a category that other defendants today

19  here also do, which is that I have to calculate his

20  guideline level but there is also a question of whether

21  under 5G1.3B that level has to in some way be adjusted to

22  take into account state time for which he will not otherwise

23  be given credit.  It appears that the attorneys and the

24  Probation Department are all in agreement that that's

25  appropriate, so that's what I intend to do.

1          MR. CUTLER:  Thank you, Your Honor.

2          THE COURT:  Let me start, though, with the

3    guideline calculation.  I gather in this case there's no

4    challenge to the Probation Department's guideline

5    calculation as the starting point for our discussion, is

6    that correct?

7          MR. CUTLER:  That's correct, Your Honor.

8          THE COURT:  It appears then that Mr. McGlaughlin

9    has an offense level of 38.  With a criminal history

10   category of 2, his guideline range would be 262 to 327

11   months in jail.  He faces a 5 to lifetime term of supervised

12   release, a $25,000 to in excess of seven million dollar fine

13   and $100 special assessment, the $100 because there are in

14   fact two counts of conviction.  Those are Counts 2 and 9.

15          Is everyone in agreement on that to start?

16          MR. CUTLER:  Yes, Your Honor.

17          THE COURT:  As of this month, I gather Mr.

18   McGlaughlin has served 41 months of state custody.  Is that

19   also correct?

20          MR. CUTLER:  Yes, since December 21st of 1992,

21   Your Honor.

22          THE COURT:  That would suggest to me that because

23   he will not be given credit for that in the calculation of

24   his federal sentence, that what I should be considering

25   under the guidelines would be a sentence of 221 to 286

1   months, subtracting 41 months from both the low and high end

2   of the guideline range.  Everybody agrees with that.

3           MR. CUTLER:  Yes, Your Honor.

4           THE COURT:  The 11E1C plea in this case provides

5   for 168 months term of incarceration.  To agree to that, I

6   would have to depart what is the equivalent of 1 level, to

7   give Mr. McGlaughlin the not inconsiderable credit of 53

8   months.  Everyone agrees with that as well.

9           MR. CUTLER:  Yes, Your Honor.

10           THE COURT:  Let me state my reasons for agreeing

11   to depart.  As counsel have pointed out to the Court and as

12   I think is quite correct, this is a very complex case that

13   at one point had so many defendants involved that literally

14   the entire well of the Courtroom was filled.  This would

15   have been a complex trial under any circumstance.

16       The decision by Mr. McGlaughlin and so many of his

17   other defendants to plead guilty as part of a global

18   settlement agreement with the government has, while not

19   eliminated the case from the Court's docket, greatly reduced

20   the complexity of trying it.

21           First of all, there were going to have to be at

22   least two trials in this case.  This guilty plea eliminated

23   that need, and that's a significant saving of Court

24   resources.  And as I said, the fact that so many defendants

25   pleaded guilty as a part of this agreement with the

1    government has greatly streamlined the case.

2          In addition, this Court cannot ignore the fact

3    that this particular case does involve complex and difficult

4    questions raised by the defense concerning a now deceased

5    government informant, Gregory Scarpa, Senior, and the

6    conduct of an F.B.I. agent who supervised him.  There is

7    still pending before the Court in the related case the

8    question of what if any inquiry should be made at trial

9    about those matters.  But whether I were to allow inquiry or

10   not, the case would be very complex indeed.  If I were to

11   allow inquiry, it would expand the case into areas far

12   beyond the simple charges brought.  If I were not to allow

13   the inquiry, there would be difficult and undoubtedly

14   vigorously pursued issues on appeal.

15         All of these defendants have eliminated those

16   issues in this case and have accepted responsibility for

17   serious criminal conduct.  Mr. McGlaughlin is agreeing to a

18   sentence far in excess of 10 years for his criminal conduct.

19   I think that given the saving of resources and the

20   difficulties presented in this case, justice is adequately

21   done by the 11E1C plea.

22         What I've said as to Mr. McGlaughlin applies

23   equally to other defendants and so, while I may touch on it

24   briefly as it applies to them individually, I won't be

25   repeating this statement as to each defendant.

1          Is everybody satisfied with that?

2          MR. CUTLER:  Yes, Your Honor.

3          MS. CORCELLA:  Yes, Your Honor.

4          THE COURT:  Having said that, I think the only

5    thing to do is to ask you, Mr. Cutler, whether there's

6    anything more you want to be heard on, and particularly let

7    me ask you this, while I'll hear you as to anything you want

8    to say on behalf of your client.  Your letter to me does ask

9    that I commence the sentence nunc pro tunc as of April 2nd,

10   1996.  I'll hear from the government as to doing that, but

11   if I do it, then don't I have to recalculate the sentence?

12   I wouldn't think it matters much one way or the other, but

13   if there's something I'm overlooking, I'll hear from you.

14         MR. CUTLER:  My thought, Your Honor, and Betina

15   Schein's thought, was that when the case was settled back on

16   February 20th of this year, we anticipated -- I was

17   incapacitated at the time, but Ms. Schein anticipated that

18   Tom McGlaughlin would be sentenced six weeks from that

19   point.  That was our hope and anticipation.  We found out

20   from the Bureau of Prisons through our own efforts and of

21   course the efforts of the Court and the U.S. Department of

22   Probation that Mr. McGlaughlin's federal sentence wouldn't

23   commence until the Court imposed sentence on him, and that

24   would be today, June 28th, 1996.

25         So what I did, Your Honor, was that I tried to

1    couch something in order to catch up for the one, two and

2    three months that I felt Thomas McGlaughlin was losing, not

3    because of any laziness on the part of anybody, but I know

4    the Department of Probation may be overloaded.  But the

5    presentence investigation report took a long time in coming.

6    I wanted to make up for that dead time, so to speak, by

7    asking the Court to sentence him as if you sentenced him on

8    April 2nd, so that would save him three months.  That's my

9    rationale, Your Honor.

10             MS. CORCELLA:  Your Honor, if I may be heard.

11             THE COURT:  Yes, Ms. Corcella.

12             MS. CORCELLA:  I must disagree with Mr. Cutler in

13   terms of whether this was anticipated at the time of the

14   pleadings or not.  It was in fact the government who

15   determined that the defendants would not get credit, even

16   before the defendants signed the plea agreement, until the

17   date of the sentence.  I think if the Court recalls, even at

18   the time they took the pleas, it was a subject of

19   discussion.

20             Second, paragraph 4 of the plea agreement

21   specifically anticipated that and eliminated the defendants

22   from being able to request that there be any sort of nunc

23   pro tunc sentence, and I'll read paragraph 4.  "The

24   defendant agrees not to file any appeal," and then the

25   second sentence reads, "The defendant further agrees not to

1   seek any reduction of the specific sentence set forth in

2   paragraph 2 or to request that any specific sentence set

3   forth in paragraph 2 commence from any date other than the

4   date required by 18 USC Sections 3585A and B."

5        That particular sentence was negotiated for and

6   was to address this problem, which we anticipated.  It was

7   clear at the time of the negotiations that we did not know

8   when the sentencing date would be set, and we as the

9   government were unwilling to negotiate any anticipatory date

10  for sentencing.  When the defendant came in to take the

11  plea, I believe the Court specifically told counsel when

12  they asked for as early a date as possible that you would

13  obviously encourage Probation to do the report expeditiously

14  but also properly.

15       I think the Court anticipated that in light of the

16  nature of the case, this would be a complicated report to

17  prepare and provide the Court with all the facts needed to

18  make the decision the Court has made today, which is, at

19  least to Mr. McGlaughlin, to accept the plea.

20       THE COURT:  Mr. McGlaughlin, let me emphasize this

21  to you.  You've entered into an agreement with the

22  government.  I'm prepared to accept it.  So I'm not looking

23  for any reasons to aggravate your sentence beyond what was

24  agreed to by the parties.  But I'm just looking through my

25  notes to make sure that this Court did not delay the

1  sentence unreasonably, and this is the first sentencing

2  date.  This was the date set on the days of the plea, so

3  this isn't a case where I had to move it to accommodate my

4  schedule or anything like that.

5          It seems to me that everybody has worked

6  conscientiously to keep this case on schedule once the pleas

7  were taken, and so I'm not going to make this sentence nunc

8  pro tunc.  This was the understanding at the time of the

9  pleas.  In fact, I had set this sentencing date on February

10  20th, when some of your codefendants pleaded guilty.  When

11  you pleaded guilty on the 21st, you knew this was the likely

12  sentence date, so I don't think there's been any unfairness

13  here.

14          Mr. Cutler, I appreciate your trying to do the

15  best you can for your client, but I'm not going to grant

16  that application.

17          MR. CUTLER:  Your Honor, may I touch on another

18  matter?

19          THE COURT:  Yes, you may.

20          MR. CUTLER:  The other matter is with regard to

21  where Mr. McGlaughlin serves the sentence.  There are two

22  issues that I just wanted to raise, with the Court's

23  permission.  As the Court well appreciates, Mr. McGlaughlin

24  settled the case by pleading guilty to a narcotics

25  violation, which is basically, in a nutshell, almost the

1   same situation that he had in the state system, virtually

2   the same, not exactly the same.

3          He's serving a 9 to life sentence for the state

4   violation.  As a result of that, he's been here since the

5   indictment in April of 1995 on a writ.  I wanted to urge the

6   Court to allow Mr. McGlaughlin to serve his sentences, which

7   are going to run concurrently, thank goodness, to serve it

8   in a federal institution.  The state will not mind, Your

9   Honor, and I don't mean to be glib about that, because

10  they're overcrowded and they have many problems there.

11         But if he serves the sentence in the federal

12  system and it's running concurrently and the writ that

13  brings him here is just left as is, status quo, so to speak,

14  he will under the law serve it in the federal system.

15  That's what I'm trying to accomplish today, if I can.  Since

16  they're running together and the conduct is virtually the

17  same and the allocution is virtually the same, I want to ask

18  the Court to allow him to serve it in the federal system.

19         THE COURT:  Ms. Corcella, do you want to be heard

20  on that?

21         MR. CUTLER:  There's another caveat, Your Honor.

22  Once we get to that point, I'll mention the other rationale,

23  not to interrupt Your Honor.

24         THE COURT:  Go ahead, Mr. Cutler.

25         MR. CUTLER:  Is the fact that Thomas McGlaughlin,

1    who is 26 years old -- the two people closest to him in life

2    are his sister and his mother, so I wanted to indicate to

3    the Court through letters that his mother's heart condition

4    is a severe one and she's not permitted to travel great

5    lengths.  So I thought and was going to urge the Court to

6    allow Mr. McGlaughlin to serve the sentence federally and

7    hopefully in the northeast region.

8              THE COURT:  Where is he now?  What state facility

9    is he in?

10             MR. CUTLER:  In Greenhaven, in the state's prison.

11             THE COURT:  Ms. Corcella?

12             MS. CORCELLA:  We take no position about that.  I

13   don't know, though, what the mechanics of that would be.

14   I'm not convinced that it's as simple as Mr. Cutler makes it

15   out to be, but otherwise we take no position.

16             THE COURT:  I am not going to grant the request

17   that you become a federal prisoner.  You've been prosecuted

18   by the state.  If the state and federal prison authorities

19   wish to work anything out, they may.  But I do think, Mr.

20   McGlaughlin, that in many ways this is a very beneficial

21   agreement to you.  Having been sentenced in the state court

22   for what I consider to be serious criminal conduct, some but

23   not all of which overlaps what you're before me on, I'll

24   allow you to continue serving that sentence and then just

25   come over to the federal system.

1            I'll also note that it is in fact the surest way

2   of guaranteeing that your family can visit, because while

3   it's my practice to note on the judgement anyone's desire to

4   be in any part of the country because I don't want to hurt

5   family members, the likelihood that you would serve in the

6   northeast or in the New York metropolitan area given your

7   record is actually probably pretty remote.  So your

8   remaining in New York custody is probably the best way to

9   insure that your family can visit you.  Otherwise, I have

10  every expectation that you would probably be sent out of

11  this region, even though I would note on the judgement, and

12  I will note on the judgement, that you would like to be here

13  if possible.  It's just such an overcrowded region that I

14  know they accommodate very few requests.

15            Mr. Cutler, anything else you'd like to say on

16  behalf of your client?

17            MR. CUTLER:  Yes, Your Honor.  The final matter

18  that I wanted to broach prior to the Court imposing sentence

19  was the period of supervised release with regard to these

20  crimes.  Your Honor, as you can well appreciate, Mr.

21  McGlaughlin hopefully will be paroled from the state system.

22  I say that in the technical term, after serving the 9 years.

23  Notwithstanding that parole, he has a lifetime of parole

24  under the state aegis, so to speak.

25            To save judicial economy, and it made common sense

1    to me, to urge the Court to allow Mr. McGlaughlin or

2    indicate and sentence Mr. McGlaughlin to the minimum -- I

3    think it's 5 years supervisory release, due to the fact that

4    he'll be under the auspices of the state parole and

5    probation system for the rest of his life.

6           So that's why I say to the Court it would be

7    duplicative, in my opinion, if the Court gives a lengthy

8    supervised release under the federal sentencing system,

9    especially since he is going to be sent back to the state

10   initially.  We feel, Your Honor, since he is going to have

11   that over his head, so to speak, a sword of Damocles, if you

12   will, that one is enough running with the federal supervised

13   release of the minimum of 5 years rather than longer than

14   that.

15          THE COURT:  Ms. Corcella, do you want to be heard

16   on that request?

17          MS. CORCELLA:  Again, Your Honor, I think the

18   Court had indicated at the time of the pleas that supervised

19   release is up the Court, and we're going to leave it up to

20   the Court.

21          THE COURT:  I have thought long and hard about

22   this.  It does seem to me from many things in the report

23   about Mr. McGlaughlin that he would benefit from a longer

24   period of supervised release, but I do not wish to create

25   unnecessary appellate issues here or prolong this

1   litigation.  Given what you've said about the fact that he

2   will also be under New York State supervision, it is my

3   intention to sentence him to 5 years supervised release.  If

4   you want to be heard any further on that, I will hear you.

5               MR. CUTLER:  No, Your Honor.

6               THE COURT:  Mr. Cutler, anything else you'd like

7   to say on Mr. McGlaughlin's behalf?

8               MR. CUTLER:  No.  Thank you for hearing us, Your

9   Honor.

10              THE COURT:  Mr. McGlaughlin, you don't have to say

11  anything, but if you'd like to be heard before I impose

12  sentence, I'll be pleased to listen to you.

13              THE DEFENDANT McGLAUGHLIN:  No, Your Honor.

14              THE COURT:  Mr. McGlaughlin, none of what I'm

15  going to say is a surprise.  This is an agreed upon

16  sentence.  But I will say this to you.  The fact that I

17  accept this sentence and depart downwardly is based solely

18  on my assessment of the case and problems with it.  There is

19  nothing about your personal record that would support a

20  downward departure.  Indeed, I fully expect that had you

21  gone to trial and been convicted, your guidelines might well

22  have been higher and I would not have hesitated to impose

23  them.    Even though you're a very young man, you've

24  basically become a career criminal.  I have no idea whether

25  you'll ever be anything else.  You're about to spend a very

```
 1    long period in jail.

 2              Is your family here today?

 3              MR. CUTLER:  Yes, Your Honor.

 4              THE COURT:  This is a terrible thing to do to your

 5    family, to have them sit here on a day like this and have to

 6    watch this happen.  This was not, I'm sure, the dream of

 7    your mother as you were growing up.  I seriously hope that

 8    this will be the last time anybody sentences you.

 9              I sentence you on Count 2 to 168 months, the

10    agreed upon sentence.  On Count 9, I sentence you to 60

11    months, because that's the statutory maximum.  Those

12    sentences will run concurrent to one another and to the

13    state time that you are serving.  On Count 2, I thereafter

14    place you on 5 years supervised release, on Count 9, 3 years

15    supervised release, the maximum provided by law.  They will

16    run concurrently to one another, for a total of 5 years.  I

17    will not impose a fine, since it does not appear that you

18    will have the ability to pay one, particularly given this

19    lengthy period of incarceration.  I assess you $100, $50 on

20    each of the two counts of conviction.  That's required by

21    law.

22              Is there anything else?

23              MS. CORCELLA:  The government would move to

24    dismiss the remaining counts of this indictment and move to

25    dismiss the underlying indictments.  If it would help the
```

1    Court, I can state what they are.

2            THE COURT:  All of the underlying indictments in

3    the related case against Mr. McGlaughlin are dismissed.

4            Mr. McGlaughlin, I would not think there are any

5    grounds for appeal, but if you wish to appeal, you have ten

6    days to file your notice.  Thank you very much.

7            MR. CUTLER:  Thank you, Your Honor.

8            THE COURT:  Daniel Capaldo.  With respect to Mr.

9    Capaldo, I think we are in somewhat the same circumstances.

10           But, Mr. Gold, let me ask you formally for the

11   record, have you seen the presentence report and discussed

12   it fully with your client, and also the addendum and the

13   government's letter?

14           MR. GOLD:  Yes, Your Honor.

15           THE COURT:  Mr. Capaldo, have you seen these

16   reports prepared about you, seen the government's letter and

17   discussed it all with your lawyer?

18           THE DEFENDANT CAPALDO:  Yes.

19           THE COURT:  When I said we were similarly situated

20   here, I believe that Mr. Capaldo faces a guideline level

21   that would then require me to give him credit for state time

22   and then consider downward departure, similar to what

23   happened with Mr. McGlaughlin.  Let me begin by starting

24   with the guideline calculation level.

25           Is there any challenge to the Probation

1   Department's calculation?

2           MR. GOLD:  No, Your Honor.

3           THE COURT:  It appears then that the total offense

4   level for Mr. Capaldo is 38.  With a criminal history

5   category of 1, his guideline range is 235 to 293 months.  He

6   has a 5 to lifetime supervised release as a possibility, a

7   $25,000 to in excess of four million dollar fine and $100

8   special assessment.

9           Are we all in agreement as to those guidelines?

10          MR. GOLD:  Yes, Your Honor.

11          THE COURT:  In Mr. Capaldo's case, he I believe

12  has served as of this month 48 months of a state sentence.

13          MR. GOLD:  Actually, Your Honor, as of this coming

14  Tuesday, it will be 49 months.  The arrest date was June

15  2nd, 1992.

16          THE COURT:  Is that correct, Ms. Corcella?

17          MS. CORCELLA:  I will accept his representation.

18          THE COURT:  I think that means then that the

19  reduction or the credit for that time, the reduction is

20  really how I should put it, would mean that I would be

21  considering a sentencing range under the guidelines of 186

22  to 252 months.

23          Does everybody agree to that?

24          MR. GOLD:  Yes, Your Honor.

25          THE COURT:  The agreed upon sentence here is 168

1  months, which means that we would be talking about an 18

2  month departure.

3          MR. GOLD:  Correct.

4          THE COURT:  For the reasons that I stated in Mr.

5  McGlaughlin's case, I would also be willing to depart

6  downward in Mr. Capaldo's case.

7          Having said that, Mr. Gold, would you like to be

8  heard any further on behalf of your client?

9          MR. GOLD:  No, Your Honor.  We made substantial

10  submissions to the Court.  I would rely on those.

11          THE COURT:  I've looked through these and I just

12  want to make sure there's nothing else that you're asking me

13  to consider with sentence that I haven't particularly noted.

14          Anything else?

15          MR. GOLD:  No, Your Honor.  Again, I'm assuming

16  the Court is of the same mind given that he and Mr.

17  McGlaughlin were similarly situated vis a vis the lifetime

18  parole, so I would have no comments regarding that.

19  Certainly, I would just ask the Court to enforce and impose

20  the Rule 11 plea.

21          THE COURT:  Mr. Capaldo, you don't have to say

22  anything, but if you'd like to be heard before I impose

23  sentence, I'd be pleased to listen to you.

24          THE DEFENDANT CAPALDO:  No, Your Honor.

25          THE COURT:  Ms. Corcella, anything you'd like to

1   add?

2          MS. CORCELLA:  No, Your Honor.

3          MR. GOLD:  Your Honor, may I just make one brief

4   comment?

5          THE COURT:  Please.

6          MR. GOLD:  I've been representing Mr. Capaldo now

7   for about 15 months.  I would just note that his mother, who

8   is present today and is in essence his only family, has been

9   a stalwart supporter of Mr. Capaldo.  I would just like to

10  publicly acknowledge the fact that she has stood behind him

11  and beside him throughout this arduous ordeal, and to

12  express his appreciation, as he has asked me to do, to her

13  in a public manner.  Thank you.

14         THE COURT:  Mr. Capaldo, I want to first let you

15  know that I have read the submission that Mr. Gold sent me,

16  the letters from many, many people on your behalf, various

17  certificates.  I also know about your attempting to earn

18  various degrees while you were in prison and the fact that

19  you've done that quite successfully.  That does all operate

20  in your favor.

21         But this plea agreement was entered into because

22  of very serious criminal conduct you've engaged in over the

23  years.  So in your case, too, there's no surprise about what

24  I'm going to do.  I'll just also mention the fact that I

25  take no pleasure in having to impose this kind of a sentence

1   in front of family.  This is not the hope or the dream that

2   your mother had for you.  I hope that somehow you'll manage

3   to turn this around and that this will be the last time that

4   anybody has to sentence you.

5          On Count 2 of the indictment, I impose the agreed

6   upon sentence of 168 months.  On Count 9, I impose the

7   statutory maximum 60 months.  Those terms will run

8   concurrently to one another and to the remaining state term

9   that you have to serve.  I thereafter impose 5 years

10  supervised release on Count 2, 3 years supervised release on

11  Count 9.  They will run concurrent to one another.  I will

12  not impose a fine.  It does not appear that you could afford

13  to pay one, particularly with this lengthy term of

14  incarceration.  I assess you $100, $50 on each of the two

15  counts of conviction, as I'm required to do by law.

16         The outstanding charges with respect to Mr.

17  Capaldo are also dismissed.  Is that what the government

18  desires, Ms. Corcella?

19         MS. CORCELLA:  Yes, Your Honor.

20         THE COURT:  Again, Mr. Capaldo, if you have any

21  basis to think you can appeal any part of the Court's

22  decision, you have 10 days in which to file a notice of

23  appeal.

24         MR. GOLD:  Thank you, Your Honor.

25         THE COURT:  Because Mr. Savarese is similarly

1    situated with respect to state time, I would take him next,

2    but I promised Judge Amon that I would wait until her break

3    when Mr. Levitt could be freed-up.

4         I'd like to proceed with Larry Sessa next.

5              Mr. Savitt, can I get you to confirm that you've

6    seen the presentence report, the addendum to it, the

7    government letters, and discussed all of these matters with

8    your client?

9              MR. SAVITT:  Yes, of course.

10             THE COURT:  Mr. Sessa, have you seen the

11   presentence report in your case, the government's letter,

12   and had enough time to discuss this fully with your lawyer?

13             THE DEFENDANT SESSA:  Yes, I have.

14             THE COURT:  I don't think there are any factual

15   objections to this report, are there, Mr. Sessa?  I know

16   there are guideline questions, but are there any factual

17   statements that you're asking to have corrected or changed?

18             MR. SAVITT:  We have interposed no objections

19   factually, Your Honor.

20             THE COURT:  I think the only legal issue is the

21   question of acceptance of the agreement.

22             MS. CORCELLA:  There is one other issue.

23             THE COURT:  I'm sorry, go ahead.

24             MS. CORCELLA:  With respect to the guideline

25   calculation.  I believe the Probation Department did not

1   accept the government's objection.

2           THE COURT:  Yes.  I was really speaking to

3   generally.  I of course will deal with the guideline

4   questions, but there are no other legal issues to resolve

5   before sentencing, is that right?

6           MR. SAVITT:  That's correct, Your Honor.

7           THE COURT:  There is a 1 level disagreement

8   between the parties in this case, and it deals with the

9   level for the role enhancement in Mr. Sessa's case.  The

10  Probation Department recommends a 3 level enhancement.  The

11  United States Attorney's Office has suggested that a 2 point

12  enhancement is more appropriate.

13          Is that the basic disagreement?

14          MR. SAVITT:  That's the basic disagreement.  We

15  agree with the government, Your Honor.

16          THE COURT:  I understand.  I'm going to accept the

17  government's recommendation.  Let me say why.  I think the

18  Probation Department is technically correct that Mr. Sessa

19  does come within the guideline level that would warrant the

20  3 point enhancement.  But viewing the totality of the

21  conduct that the various defendants participated in in this

22  case, including the defendants' conduct in the crimes of

23  conviction, I'm satisfied that whether I view this as a

24  departure in order to more accurately assign the culpability

25  among the relative players or whether I choose a different

1    guideline, it would be an erroneous aggravation of Mr.

2    Sessa's role to treat him the same way as other persons who

3    are receiving 3 points.

4           So as I said, it may technically be a departure

5    rather than a different guideline, but we will come to the

6    same net result, namely that I will assume before we even

7    get to all of the other factors, that this case would be

8    treated at level 33, simply on its facts.  With a criminal

9    history category of 2, I believe that means that Mr. Sessa's

10   guideline range would be 151 months to 188 months.  He would

11   then face a 5 year to lifetime term of supervised release, a

12   $17,500 to in excess of four million dollar fine and $100

13   order of special assessment.

14          Does everyone agree with that as a starting point?

15          MR. SAVITT:  Yes, Your Honor.

16          THE COURT:  The 11E1C agreement in this case

17   provides for a sentence of 138 months.  To agree to that

18   requires me to basically depart 1 more level, I believe.

19          Is everybody also in agreement with that?

20          MS. CORCELLA:  Yes, Your Honor.

21          MR. SAVITT:  Yes, Your Honor.

22          THE COURT:  For the same reasons that I

23   articulated with respect to Mr. McGlaughlin and Mr. Capaldo,

24   basically reasons that do not relate to Mr. Sessa

25   individually, but rather the complexity and difficulty of

1   this case and the benefits achieved by this settlement, I

2   will depart downward in his case to the agreed upon level.

3          Your client I gather has completed his state

4   sentence and is now purely a federal prisoner, so we don't

5   have any of the adjustments that had to be made in other

6   defendants' cases, correct?

7          MR. SAVITT:  The only caveat with respect to that

8   issue, as Your Honor asked me to remind you, and it was

9   reflected in our plea agreement, is that since April 4th of

10  1995 --

11         THE COURT:  April 4th of 1995.  That's when this

12  sentence would begin to run.

13         MR. SAVITT:  That's correct, Your Honor.

14         THE COURT:  I am prepared to agree to that.  That

15  seems completely accurate.

16         Having said that, Mr. Savitt, is there anything

17  more you'd like to say on behalf of your client?

18         MR. SAVITT:  Your Honor, I think everything that

19  has to be said was already said in my submission.

20         THE COURT:  You did give me a detailed submission

21  and I want to assure Mr. Sessa that I've read it carefully.

22         Mr. Sessa, you don't have to say anything, but if

23  you'd like to be heard, I'd be pleased to listen to you.

24         THE DEFENDANT SESSA:  No, thank you, Your Honor.

25         THE COURT:  Ms. Corcella, anything else?

1           MS. CORCELLA:  No, Your Honor.

2           THE COURT:  Mr. Sessa, you've been in front of me

3    longer than any defendant in this case.  You started out as

4    a single defendant in this case.  The criminal conduct

5    you've engaged in over the years is disturbing in the

6    extreme, but I'm satisfied that justice is adequately done

7    in your case with this plea.

8       I hope in your case as well that this will finally

9    impress upon you the need to find some other life.

10          I sentence you on Count 2, as agreed to, to 138

11   months in the custody of the Attorney General.  That term

12   will be effective as of April 4th, 1995.  In other words,

13   you will receive credit for the time, the year and some

14   months you've been in jail as a federal prisoner.  On Count

15   9, I sentence you to 60 months.  That's the maximum provided

16   by law, and those two terms will run concurrently to one

17   another.

18          On Count 2, I sentence you to 5 years supervised

19   release, on Count 9, to 3 years supervised release.  Those

20   terms will run concurrently.  I do not impose a fine in your

21   case.  I do not think you could afford to pay one.  I assess

22   you $100, as I'm required to do by law.

23          The government moves to dismiss any outstanding

24   counts?

25          MS. CORCELLA:  Yes, Your Honor.

1          MR. SAVITT:  Your Honor, my only other request is

2    if Your Honor can make a recommendation on the judgement

3    form that Mr. Sessa be designated to a facility nearby to

4    his home.  I should note that his mother, his sister and his

5    fiance are all in the seventh row, the spectators to the

6    Court's right.

7          THE COURT:  I don't make recommendations, but I

8    will note that the defendant does ask for it, if he can be

9    accommodated.

10         Mr. Sessa, you heard me tell Mr. McGlaughlin I do

11   this for everybody that asks, because I don't want to hurt

12   anyone's family.  But it's such a crowded area that they

13   accommodate very few people.  If they can accommodate you, I

14   know it will make things easier for your family, but I don't

15   want to hold out any false hopes.

16         MR. SAVITT:  Thank you very much, Your Honor.

17                   (Pause in Proceedings)

18         THE COURT:  Dean Gargagliano, please.

19         Mr. Futerfas, can you confirm for me that you've

20   seen the presentence report, the addendum to it, the

21   correspondence from the government, and discussed all of

22   this with your client?

23         MR. FUTERFAS:  Yes, I have, Your Honor.

24         THE COURT:  Mr. Gargagliano, have you seen all of

25   these papers that I just referred to and discussed them

1    fully with your lawyer?

2           THE DEFENDANT GARGAGLIANO:  Yes, Your Honor.

3           THE COURT:  In this case I believe there are some

4    factual issues.  They do relate to guideline calculation.

5    For instance, there is the question about the treatment of

6    the firearm in this case.

7           Mr. Futerfas, do you want to add anything more to

8    your written submission?

9           MR. FUTERFAS:  The only thing I want to say is

10   that the government and I agree that I believe it's 3 points

11   -- that the 3 points relating to paragraph 45 of the

12   presentence report with respect to 2E2.1 -- we agree that 3

13   points is applicable and not 4, which I believe is how the

14   Probation report scored it, but we agree for different

15   reasons.  I agree and the defense agrees to that because we

16   agree that in relation to the overall crime of extortion,

17   that a firearm was carried and that that would constitute

18   possession under these circumstances.  The government

19   apparently is relying -- is agreeing to the same number, but

20   it is relying on an allegation of a pistol whipping or an

21   assault.

22          MS. CORCELLA:  That's not correct.  We agree for

23   the same reasons.

24          MR. FUTERFAS:  Then I stand corrected.

25          MS. CORCELLA:  We have repeatedly told Probation

1    that we believe there was an incident of pistol whipping,

2    but since we cannot determine whether that victim was a

3    narcotics customer or a loan sharking customer or whatever,

4    and the offense characteristic specifically says you have to

5    find that it's a loan sharking customer, we are saying that

6    it may be unfair to apply this specific offense

7    characteristic.   Therefore, we simply do agree with Mr.

8    Futerfas.   We do believe he carried a firearm in connection

9    with the offense.

10           THE COURT:   I think the difference is that Mr.

11   Futerfas is disputing whether there was ever any pistol

12   whipping.

13           MR. FUTERFAS:   That's correct.

14           THE COURT:   Let me say this.   I consider that kind

15   of conduct outrageous.   But for the plea agreement before

16   the Court, I would probe further into this, because whether

17   this conduct is treated as part of the crime of conviction

18   and therefore enhanced under 2E2.1 or whether it's other

19   conduct that perhaps could be viewed as related because of

20   the overall enterprise here or not, as I said, but for the

21   agreement it's something that I would prove further and if

22   it were desired, I would conduct a hearing.

23           But I assume that because I am prepared to accept

24   the agreement, which would require a downward departure from

25   the Probation Department's guidelines, and so what I'm

1    saying is that I would downwardly depart to accept this

2    agreement if I had to, that if I calculate it as the

3    government and the defense urge me to do so that I come

4    within the guidelines, no one is going to ask me to conduct

5    that hearing one way or the other.

6              Is that satisfactory to everybody?

7              MR. FUTERFAS:  It is, as long as the denial is

8    noted, because it is a very strong denial, Your Honor.

9              THE COURT:  I'll ask the Probation Department to

10   note that the defendant does deny that he ever pistol

11   whipped anyone, that the Court calculates the guidelines as

12   recommended by the United States because the government

13   could not adduce evidence that the conduct, the alleged

14   pistol whipping, occurred in connection with the extortion.

15   But the Court, because it's prepared to sentence at the

16   agreed upon level, finds it unnecessary to resolve the

17   factual dispute here as to whether anyone was or was not

18   pistol whipped.

19             MR. FUTERFAS:  Very well, Your Honor.

20             THE COURT:  I believe that resolves the factual

21   issues in dispute.  Am I right?

22             MR. FUTERFAS:  I think so.  The only other issue

23   that we raised in our papers is a minor role.  We raised it

24   because I wanted to express to Your Honor that I believed in

25   the overall scheme, the overall enterprise, Mr. Gargagliano

1    had a minor role.  However, as we state in a footnote to our

2    papers, the Court may find that no role adjustment is

3    appropriate on the offense of extortion to which he pled.

4    In that case, the guideline calculation would be consistent

5    with the government's.

6              THE COURT:  That would be my inclination.  If you

7    want a hearing, I'll of course conduct one, but on the

8    record before me, I would not be prepared to aggravate Mr.

9    Gargagliano's role in any way, but I'm not prepared to see

10   it as a minimal one.

11             Do you want a hearing?

12             MR. FUTERFAS:  No, Your Honor.

13             THE COURT:  Or a minor one, I should say.

14             MR. FUTERFAS:  No.

15             THE COURT:  Then for the reasons that I've just

16   stated, I would find that the offense level in this case is

17   23.  With a criminal history category of 1, the defendant

18   faces a 46 to 57 month term of incarceration, a 2 to 3 year

19   term of supervised release, a $10,000 to in excess of two

20   million dollar fine and a $50 order of special assessment.

21             Is everyone in agreement?

22             MR. FUTERFAS:  Yes, Your Honor.

23             THE COURT:  Mr. Futerfas, if you'd like to be

24   heard any further, I have read your detailed submission, but

25   anything else you'd like to say on behalf of your client?

1          MR. FUTERFAS:  There is an explanation for this

2    whole pistol license, how he came to get the license, but I

3    really think in light of the whole case and what we're doing

4    here today, it's not really necessary to go into an

5    explanation and debate with the government about how he got

6    the license, why he got the license.  I think it's a very

7    minimal point.

8          The only thing I would request therefore, Your

9    Honor, is two things.  First, a recommendation for the

10   northeast region so he can be near his family, as I know

11   Your Honor has done with other defendants.  I would ask that

12   there be a recommendation that he not go to a medical

13   facility.  Sometimes the BOP takes a look at the medical

14   files on an individual and makes their own determination

15   that he should be in a medical facility.  If they did that,

16   they could send him to Rochester or they could send him to

17   Missouri or wherever there is a medical facility.  I don't

18   think there's one nearby.

19         So we would recommend that the BOP not send him to

20   a medical facility, that he be sent to the northeast region,

21   with the lowest security level that the BOP would arrive at

22   in his case.  And then finally that the Court recommend a

23   drug program or alcohol program, given the obvious problem

24   which presented itself prior to the plea or prior to the

25   disposition of this case.  That's all I have.  The PSR notes

1    that he's unable to pay a fine.  That's accurate.  That's

2    all we have, Your Honor.

3              THE COURT:  Mr. Gargagliano, you don't have to say

4    anything, but if you'd like to be heard before I impose

5    sentence, I'll be pleased to listen to you.

6              THE DEFENDANT GARGAGLIANO:  I just want to thank

7    the Judge for treating me fairly through all of this and for

8    letting me go to Florida to see my grandmother.  Thank you.

9              THE COURT:  Ms. Corcella, do you want to be heard?

10              MS. CORCELLA:  No, Your Honor.  I believe we

11    perhaps stated a little more strongly our position with

12    respect to Mr. Gargagliano in a letter we supplied

13    yesterday, but I have nothing further to add on the record.

14              THE COURT:  Mr. Gargagliano, in your case, in

15    contrast to the other people I've sentenced this morning,

16    I'm going to be sentencing you to 4 years, not to in excess

17    of 10.  So you have a future that is immediately visible to

18    you, as opposed to people who don't see themselves getting

19    out of jail anytime in the near future.  I have to tell you

20    that I'm glad you think the Court has treated you fairly,

21    because I'm very disturbed by your criminal conduct,

22    particularly given the fact that you've been a law

23    enforcement officer.  In fact, I find it incomprehensible

24    that anybody who ever took the oath as a police officer

25    could engage in the kind of conduct that brings you before

1  this Court.

2          I know you've suffered a personal tragedy, but

3  many people have suffered far worse, many police officers

4  have suffered far worse and turned their lives to productive

5  and indeed sometimes noble purposes.  You, by contrast, have

6  engaged in the most ignoble activities that can be imagined.

7  I sincerely hope that many of the good qualities that people

8  have talked about in letters to me, in submissions made by

9  your lawyer, will prevail, and that this will be the last

10 time you're before anybody.

11         I sentence you to the custody of the Attorney

12 General, as agreed to, to 48 months.  I thereafter place you

13 on 3 years supervised release.  I will not impose a fine in

14 your case because as I understand it, you've incurred a debt

15 to your family to pay for the legal fees in this case.  I

16 will make it a special condition of your supervised release

17 that during the time of your supervised release, you make a

18 good faith effort to pay back your father for the fees that

19 have been paid in this case.  These weren't the dreams of

20 your family for you and they have, I assume, gone

21 substantially into debt or given up a lot of their savings

22 in order to deal with your circumstances here.  I also

23 assess you $50 because I'm required to do it by law.

24         Ms. Corcella, did I misspeak on something?

25         MS. CORCELLA:  I believe he also pled guilty to

1   Count 9.  All of the defendants pled guilty to Count 9,

2   except for --

3            THE COURT:  I'm sorry, 48 months on Count 5, 48

4   months on Count 9.  It runs concurrently.  3 years

5   supervised release on each count.  It also runs

6   concurrently.  It's $100 special assessment because I must

7   impose $50 on each count of conviction.

8            Is there anything else?

9            MS. CORCELLA:  The government moves to dismiss the

10  underlying counts.

11           THE COURT:  With respect to the recommendations

12  sought, I don't make recommendations.  I only note on the

13  judgement for the Bureau of Prisons' consideration the fact

14  that the defendant would like to be sentenced in the

15  northeast region if that's possible, and does not think that

16  he needs designation to a medical facility.  Ultimately,

17  that's the Bureau of Prisons' decision, because they have

18  the responsibility for your health, but I will note right on

19  the judgement that you're asking not to go to a medical

20  facility.

21           As far as the drug program goes, I have no reason

22  to think in your case that this is anything other than a

23  genuine request, but of late, people have found out that

24  they can get some benefits by participating in drug

25  treatment and rehabilitation and I have people who've never

1    admitted to taking drugs on drug rehabilitation.  I'll note

2    that you're asking for it.  I won't specifically recommend

3    it.  As I said, I have no reason to think that in this case,

4    it's anything other than genuine.  Thank you very much.

5            THE COURT:  I'm told your client is still not

6    here, Mr. Kaiser.

7            Joseph Santapeola.  This matter also involves a

8    presentence report, an addendum to it and correspondence

9    from the government.

10           Counsel, have you seen it and gone over all of it

11   with Mr. Santapeola?

12           MR. ROMANO:  I have, Your Honor.

13           THE COURT:  Mr. Santapeola, have you seen all of

14   these documents from the Probation Department and from the

15   U.S. Attorney's Office and had enough time to talk them over

16   with your lawyer?

17           THE DEFENDANT ROMANO:  Yes, Your Honor.

18           THE COURT:  In this case, I know that there's an

19   objection to the loss attributed to the defendant, but I'm

20   not sure that it has any practical purpose except with

21   respect to the fine level in this case.  I can deal with

22   that at the appropriate time.  I think even the government

23   suggests that I calculate that with reference to about a

24   half million dollar loss, rather than a loss far in excess

25   of a million dollars.

1              If I do that, is that satisfactory?

2              MR. ROMANO:  It is, Your Honor.

3              THE COURT:  Are there any other factual statements

4    in the report to which the defense wishes to take exception?

5              MR. ROMANO:  No, Your Honor.  We raised various

6    objections to the presentence report --

7              THE COURT:  Right, but I don't think any of the

8    others relate to the facts in the report, do they?

9              MR. ROMANO:  That's correct.

10             THE COURT:  Other than guideline calculation, I

11   don't think there are any other legal issues to resolve, are

12   there?

13             MR. ROMANO:  No, Your Honor.

14             THE COURT:  There is of course in this case a

15   difference between the government's guideline calculation

16   and that of the Probation Department.  The Probation

17   Department, as I said, uses a million five as the amount of

18   tax evasion.  The government suggests that I use the figure

19   of a little over a half a million dollars for purposes of

20   calculating the loss.

21             Having reviewed all of the submissions by the

22   parties, I do think this more accurately reflects Mr.

23   Santapeola's accountability for the criminal conduct.

24   Whether this is appropriately viewed as a difference in

25   guideline calculation or a departure, I am prepared to start

1    with that as our sentencing figure, and I also gather we'll

2    be using two kilograms of cocaine to calculate this.

3           Is that agreeable to everybody?

4           MR. ROMANO:  Yes, Your Honor.

5           THE COURT:  That would mean that Mr. Santapeola

6    would start with a guideline level of 19 and a criminal

7    history category of 1.  This would give him a guideline

8    range of 30 to 37 months in jail, a $10,000 to approximately

9    one million dollar fine, a 2 to 3 year term of supervised

10   release and a $100 special assessment.

11          In this case, the 11E1C agreement is to 24 months

12   in jail.  To agree to this, I would have to depart 2 levels.

13   For the reasons I've stated with other defendants which

14   relate to the case, not to the defendant individually, I

15   would be prepared to accept this.

16          MR. ROMANO:  Yes, Your Honor.

17          THE COURT:  Having said that, Mr. Romano, is there

18   anything more you would like to say on behalf of your

19   client?

20          MR. ROMANO:  Yes, Your Honor.  At the appropriate

21   time, I'd like to ask as far as sentencing is concerned --

22   my client is interested in the intensive supervision

23   program, the shock incarceration program for Mr. Santapeola,

24   and I could list the various reasons if you want me to go

25   into it now.  In the presentence report, it indicates his

1  inability to pay a fine.  It lists his assets and his

2  liabilities on a monthly basis, the fact that he supports

3  three children from a previous marriage and is re-married

4  and has one child from his new marriage.

5       As far as the shock incarceration program which my

6  client is eligible for and fits the conditions for under

7  Title 18, based on his age, his criminal history, the fact

8  that he has never been incarcerated or arrested on any other

9  matter, his educational background, which I submit to Your

10  Honor is minimal, and he could actually benefit from the

11  vocational skills that this program offers.  He has a stable

12  mental and emotional condition.  His physical condition is

13  well.  As stated in the presentence report, all the work

14  he's ever done has been as a truck driver, as a garbage

15  truck driver, as a long hauler for various companies.  He's

16  always engaged in -- I would describe it as hard working,

17  labor intensive work.

18       He has strong family ties in the community.  His

19  wife is here, his friends are here, his mom is here in the

20  Courtroom.  They're all very concerned about this.  He is a

21  category 1 of a criminal history.  There are various

22  dependents, three very small children, as well as a 20 month

23  old baby, who all depend on Mr. Santapeola for their

24  livelihood, for their support, for their continuing

25  wellbeing.  That's my application to Your Honor as far as

1    the intensive supervision program is concerned.

2              THE COURT:  Before I ask Mr. Santapeola if he

3    wishes to be heard, Ms. Corcella, do you have any position

4    on that?

5              MS. CORCELLA:  No, Your Honor.

6              THE COURT:  Mr. Santapeola, you don't have to say

7    anything, but if you'd like to be heard on your own behalf,

8    I'll be pleased to listen to you.

9              THE DEFENDANT SANTAPEOLA:  No, Your Honor.

10             THE COURT:  Do you understand what the intensive

11   incarceration program is?  You have no freedom.  You're like

12   up at 6:00, your whole day is regimented.  It's like going

13   into the Marines.  Do you understand that?

14             THE DEFENDANT SANTAPEOLA:  Yes, I do, Your Honor.

15   I was informed about the program through my lawyer, and I

16   just feel that it would -- I would be able to be

17   rehabilitated a little quicker going through the shock

18   program and put my life back into perspective, where I can

19   still take care of both my families.

20             THE COURT:  Is there anything more that the

21   government wishes to be heard on?

22             MS. CORCELLA:  No, Your Honor.

23             THE COURT:  Mr. Santapeola, the only reason I

24   would consider putting you in the intensive incarceration

25   program is so that you could get out sooner and support your

1    family.  There are four children who depend on you, and I

2    recognize that your absence will have some consequences for

3    them, not only financially, but I would hope at some point

4    you would recognize that your children need a real and

5    serious role model.

6             You have a 12 year old son, I believe, isn't that

7    right?

8             THE DEFENDANT SANTAPEOLA:  14, Your Honor.

9             THE COURT:  You know what kind of temptations are

10   going to face him in the years ahead, and I would hope you'd

11   want better for him than what you've had.  The only way for

12   him to have any chance in that regard is if someone is

13   constantly giving him some reason to live a life other than

14   the ones he'll be tempted to live.  I'm going to take this

15   chance on you, but there will be conditions.

16            I also have to tell you that I think this is a

17   limited resource, this shock incarceration program, so I

18   have no interest in putting people in it who aren't going to

19   succeed in it.  I know you're going to succeed in it,

20   because I actually think that you're not the kind of person

21   who lacks the self discipline.  You don't need the

22   rehabilitation.  You need to have something click in your

23   own mind where you turn from this track to a completely

24   different lifestyle.

25            You're going to be on supervised release with

1    conditions.  If there are any violations, I can assure you

2    I'll view what I do today as lenient and you will not see

3    that leniency a second time.

4            Do you understand that?

5            THE DEFENDANT SANTAPEOLA:  Yes, I do.

6            THE COURT:  I will sentence you to the custody of

7    the Attorney General for a period of 24 months.  Let me make

8    clear what I'm doing here.  That's 24 months on Count 5 and

9    24 months on Count 9, the terms to run concurrent to one

10   another.  I thereafter place you on 3 years supervised

11   release.  It is a special condition of your supervised

12   release that you continue to support all 4 of your children

13   and that you maintain gainful and lawful employment.  If you

14   do not maintain gainful and lawful employment, I will

15   consider that a violation of your supervised release, or if

16   you don't support your family I'll consider it a violation

17   of your supervised release and I'll put you back in jail,

18   because that's the only reason I'm showing you leniency.

19           I won't impose a fine because with these financial

20   demands on you, I don't think you could afford to pay one,

21   but I assess you $100, as I'm required to do by law, $50 on

22   each of the two counts of conviction.  I will recommend you

23   for the intensive incarceration program.  Usually, the best

24   way to go into one of those programs is if we can find when

25   the next one is and if Mr. Santapeola surrenders directly to

1    it.

2              Have you made any inquiry along those lines, Mr.

3    Romano?

4              MR. ROMANO:  I haven't, Your Honor.

5              THE COURT:  I will set a surrender date, but I

6    will be willing to amend it.  If Mr. Santapeola is accepted

7    into one of the intensive incarceration programs, he'll go

8    in on that date, the program date, instead of the date I'm

9    setting.  I'm going to pick a date approximately 2 months

10   from now.  I will look to you, counsel, to work out with the

11   Probation Department whether your client is going to be

12   accepted into the incarceration program.

13             Mr. Santapeola, I recommend you and that

14   recommendation does count for something, but in the end, you

15   have to be accepted by the Bureau of Prisons.  If they do

16   not accept you into the program, then you have to surrender

17   on the date I set to general prison population, and you'll

18   serve 2 years.

19             Do you understand that?

20             THE DEFENDANT SANTAPEOLA:  Yes, Your Honor.

21             THE COURT:  Mr. Taveras, a surrender date

22   approximately 2 months from now.

23             THE CLERK:  August 26th, Your Honor.

24             THE COURT:  August 26th, that's a Monday, by noon

25   to whatever facility, and the alternative is if you find out

1  that he's accepted to another program and it has a starting

2  date either before or after, then I'm to be notified and

3  I'll amend the order for surrender.

4          MR. ROMANO:  I will, Judge.  He would like to go

5  in and start as soon as possible.

6          THE COURT:  As I said, if you can find out if

7  there's a program starting this summer, then that's what

8  will happen.

9          MR. ROMANO:  I'll check into it.

10         THE COURT:  If he's not accepted into the program

11 and he wants to surrender sooner, I'll oblige him in that as

12 well.

13    The sooner you get this all over with, the better it is

14 for you and your family.

15         Anything else?

16         MS. CORCELLA:  We'd move to dismiss any underlying

17 counts.

18         THE COURT:  That's granted.

19         Has Ms. Newman arrived yet?  Yes.  Thank you.

20         I didn't see you, Ms. Newman.  I'm sorry.

21         Peter Tagliavia.

22         Ms. Newman, were you here during the time that I

23 discussed with other counsel the 11E1C pleas and my decision

24 to accept them?

25         MS. NEWMAN:  Yes.

1              THE COURT:  The difference for your client is that

2    your client is in a position where acceptance of the plea

3    would require an upward departure from his guideline

4    calculation rather than a downward departure.  It does seem

5    to me on the facts and circumstances of the case here that

6    allowing Mr. Tagliavia to plead to extortion and not to any

7    other possible crimes does confer some benefit on him and is

8    one of the reasons that his guidelines are as low as they

9    are.

10             It would be possible, as I've said to other

11    defendants, for me to consider other conduct as related to

12    an overall enterprise here.  That would more than support

13    upward departure in his case.

14             As I said, he's uniquely situated.  He's the only

15    person who would be sentenced to a term of incarceration

16    higher than his guidelines rather than lower.

17             Have you discussed all of this with him and does

18    he wish to stand by the plea agreement?

19             MS. NEWMAN:  Yes, Your Honor.

20             THE COURT:  Mr. Tagliavia, is that correct?  You

21    wish to stand by the plea agreement, knowing that you're

22    going to be sentenced to a considerably higher term than

23    your guideline level?

24             THE DEFENDANT TAGLIAVIA:  Yes.

25             THE COURT:  Having started with that

1    preliminarily, Ms. Newman, can you confirm for me that

2    you've seen the presentence report, the government's letters

3    and discussed all of these with your client?

4              MS. NEWMAN:  Yes, Your Honor.

5              THE COURT:  Mr. Tagliavia, you've discussed the

6    presentence report and the government's letters fully with

7    Ms. Newman?

8              THE DEFENDANT TAGLIAVIA:  Yes, I have.

9              THE COURT:  Are you satisfied with the help she's

10   given you so far?

11             THE DEFENDANT TAGLIAVIA:  Yes, I am.

12             THE COURT:  I don't believe there's any challenge

13   to the Probation Department's guideline calculation, is that

14   correct?

15             MS. NEWMAN:  That's correct, Your Honor.

16             THE COURT:  Or to the facts or statements

17   contained in the Probation report?

18             MS. NEWMAN:  Yes, Your Honor, as a matter of fact,

19   there are.

20             THE COURT:  I do have your letter.

21             MS. NEWMAN:  I outlined some corrections, some

22   factual corrections.  In paragraphs 2, 27 and 81, the

23   presentence report indicates that there were 3 kilograms of

24   cocaine seized from Mr. Tagliavia's apartment.  In fact,

25   it's my understanding from the discovery that there was just

1   under a kilogram.  I've confirmed this with the government.

2           THE COURT:  Is that correct, that there was 1

3   kilogram seized?  Your letter said that your client thought

4   there was only kilogram, so I wasn't sure whether he just

5   misunderstood how much had been left with him.

6           MS. CORCELLA:  In going over these I forgot to

7   inform the Court.  That is correct.  There were 6 1/8 keys

8   of cocaine, so it was just under 1.

9           THE COURT:  It's not going to make any difference

10  to this Court's sentencing decision, but we've gotten that

11  clarified.  I'll ask the Probation Department to correct the

12  report to indicate that it was approximately a kilogram

13  rather than 3 kilograms that was seized.  I am prepared to

14  accept your representation that he wasn't paid by his uncle

15  when he was a high school student, so you can accept that.

16          With an offense level of 15 and a criminal history

17  category of 1, the defendant faces an 18 to 24 month term of

18  incarceration under the guidelines, a 2 to 3 year term of

19  supervised release and a $50 special assessment.  Because of

20  related criminal conduct, though, I am prepared to depart

21  upward to the 48 months that was the agreed upon 11E1C

22  sentence.

23          Having said that, Ms. Newman, I'll hear you as to

24  anything you'd like to say on your client's behalf.

25          MS. NEWMAN:  In my letter that I know Your Honor

1    has reviewed of June 26th, 1996, I bring up two other issues

2    or three other issues, actually.  We would request a

3    downward departure for the supervised release.  I can wait

4    until after to comment.

5         THE COURT:  I'll be happy to hear you on it, but

6    I'm very disinclined to do that.  With the individuals who

7    were in this enterprise, I do think they need some

8    supervision after they come out of jail to insure that any

9    temptations they might face not be succumbed to.

10        MS. NEWMAN:  I think Mr. Tagliavia is somewhat

11   unique in light of the fact that he has in effect been out

12   of jail for 4 years since the crimes that have been alleged

13   here.  His life has been one in which he's worked very hard.

14   He's been on electronic monitoring for 1 year and going to

15   rehabilitation for 1 year, all of which he has received

16   praise for.  He has worked very heard, although it's a new

17   business and unfortunately hasn't earned a great deal of

18   money, but he wanted to do something on his own,

19   particularly in light of the fact that he will be out of

20   prison in less than 4 years.

21             -- comes from a very closeknit family --

22        THE COURT:  I'm sorry, we have to change tapes.

23             (Tape is being changed)

24        THE COURT:  Go ahead.

25        MS. NEWMAN:  Just to back up, Your Honor, my

1    client has worked very hard over the 4 years since the

2    offense conduct.  In fact, recently he opened up his own

3    business, his construction business, and has worked hard on

4    that, although as a new business, he has not earned a great

5    deal of money.  He has done that with a purpose, because he

6    sees a future for himself.  He knows he can come back to

7    that.  That is why he has done that.  I think that shows

8    where his mind is, where his intent is, to work hard.

9         He has plans to be married.  His fiance is in the

10   audience, as is his father, his two aunts and his uncle.

11   They have been here consistently.  He has a very closeknit

12   family.  He still lives at home, and but for nine months

13   when he lived with a friend, he has always lived at home.

14   His family functions have been the significant part of his

15   life growing up and continue to be so.  I am sure Your Honor

16   is aware that the only time he asked to be relieved of the

17   conditions of electronic monitoring was in fact to attend a

18   family function.  I think that shows the support that he has

19   and has maintained.

20        Pretrial has gone and interviewed the family and

21   concurs with that, that this is a closeknit family, a family

22   in which the father is involved in law enforcement.  To say

23   that this is a disappointment, that this is very upsetting

24   to the family, goes without saying.  But I also believe that

25   it's been very upsetting to Mr. Tagliavia, and he has

1  changed considerably.

2        One also has to consider how he got involved in

3  this to begin with.  He was addicted to cocaine, as he

4  readily admits in his admissions to Probation.  He said, I

5  didn't realize it at the time, but now that I've been

6  involved in rehabilitation and I've been educated, I

7  recognize that I had an alcohol problem, I recognize that I

8  had a cocaine problem.  But it's also significant that as

9  soon as he was arrested, before starting rehabilitation, on

10  his own, he stopped all consumption.

11        I don't know if he would have characterized it as

12  an addiction, but through the education he now recognizes

13  that it was an addiction, and he's gone a long way.  So what

14  I'm saying is, I don't know that supervised release in this

15  case is necessary, or if it is, Your Honor, if you consider

16  that it is, I believe it should be minimal.

17        THE COURT:  Ms. Newman, while I appreciate your

18  attempts as an advocate to do the best you can for your

19  client, actually everything you've said suggests to me that

20  he's exactly the kind of candidate who needs supervision,

21  particularly if drugs played a part.  It's too easy to lapse

22  back into drugs and all the problems that go with it.  I'm

23  not looking to punish Mr. Tagliavia any more than necessary,

24  but I do think he needs some supervision when he finishes

25  his prison term.

1          Is there anything else?

2          MS. NEWMAN:  Yes.  I also have asked the Court to

3    consider recommending a drug treatment program.  I know that

4    there is one in Fairton (ph.) that's currently running.  In

5    light of the fact that he's gone through the rehabilitation

6    through Probation, and I have spoken with Fairton, they

7    would consider him a candidate.  Being a first time

8    offender, being the fact that he was involved in a

9    rehabilitation program while he was on bail --

10         THE COURT:  I'll note on the judgement that he's

11   requesting consideration for a drug rehabilitation program.

12         MS. NEWMAN:  Also, I would of course recommend

13   that he be designated in the northeast region.  Lastly, I

14   would ask Your Honor to allow him to voluntarily surrender.

15   I believe that his record on bail would support this.

16         THE COURT:  How soon is he ready to do that?

17         MS. NEWMAN:  One month, Your Honor?

18         THE COURT:  He wants to surrender to the

19   designated institution?

20         MS. NEWMAN:  Yes, or as soon as they designate.  I

21   have indicated to him that it generally takes about a month.

22   That's been my experience, and that's fine, as soon as he's

23   designated.

24         THE COURT:  Let me ask the government's its views

25   on that.

1          Do you have any position on voluntary surrender in

2    this case?

3          MS. CORCELLA:  In light of the fact that he has

4    been absolutely no problem as far as I can recall on

5    electronic monitoring, there's probably convincing evidence

6    that he would not be a flight risk.

7          THE COURT:  Is that it, Ms. Newman?

8          MS. NEWMAN:  Yes.

9          THE COURT:  Mr. Tagliavia, you don't have to say

10   anything, but if you'd like to be heard before I impose

11   sentence, I'll be pleased to listen to you.

12         THE DEFENDANT TAGLIAVIA:  No, Your Honor.

13         THE COURT:  Anything else, Ms. Corcella?

14         MS. CORCELLA:  No, Your Honor.

15         THE COURT:  Mr. Tagliavia, the agreed upon

16   sentence is the one I will impose in your case, because I

17   think the totality of your criminal conduct more than

18   warrants it.  I sentence you to the custody of the Attorney

19   General on the single count of conviction to 48 months.  I

20   thereafter place you on 3 years supervised release.

21         As special conditions of your supervised release,

22   you will be required to continue to participate in either

23   drug counselling or rehabilitation, if the Probation

24   Department thinks it would be of assistance to you.  It may

25   be that after your time in jail, if you've completed a

1    program there, that you won't need that help or support

2    anymore, but I just think that this is part and parcel of

3    your problem, and so any bit of help that can be given to

4    you to make sure you don't go back on that track is

5    important.

6            It's further a special condition of your

7    supervised release that you seek and maintain lawful

8    employment.  It's the best way to ensure that you don't go

9    back into this particular type of life.  I won't impose a

10   fine at this time.  I don't think you could afford to pay

11   one.  I assess you $50, as I'm required to do by law.

12           MS. CORCELLA:  I believe there are open counts to

13   dismiss.

14           THE COURT:  I will grant their dismissal now.  I

15   will allow Mr. Tagliavia to voluntarily surrender.

16           Mr. Taveras, can you give me a surrender date in

17   approximately a month to six weeks?

18           THE CLERK:  July 29th, Your Honor.

19           THE COURT:  July 29th, which is a Monday, by noon.

20           Ms. Newman, I'll look to you to find out from the

21   Marshals when he's been designated.  The designation will

22   probably be relatively soon.

23           I gather the government does not think there's any

24   need to reconsider the conditions of bail in light of this.

25           MS. CORCELLA:  Your Honor, I realize he's going in

1   for a serious amount of time for a serious offense.  I am

2   convinced that he has not posed any problem.

3          THE COURT:  I'll note on the judgement that if

4   there's space available, you're asking for consideration in

5   the northeast region.  If they think you're eligible, you're

6   looking to participate in a drug rehabilitation program.  I

7   hope you and your family heard me tell other people that

8   I'll recommend this for anybody from the northeast region,

9   but it's a very crowded area.  I don't know if they'll grant

10  it to you.  I have to warn you about that right now.

11         THE COURT:  United States versus Joseph Savarese.

12         Mr. Savarese, your attorney of record, Mr. Levitt,

13  is on trial right now before another judge in this building,

14  Judge Amon.  I am prepared to wait for him if you would like

15  Mr. Levitt here.  But Mr. Kaiser, who has covered for him at

16  many appearances in this case, has indicated he would be

17  prepared to go forward with you, if you're comfortable with

18  that.  The choice is yours.

19         THE DEFENDANT SAVARESE:  I'd like to go forward,

20  Your Honor.

21         THE COURT:  In this case, I've received a

22  presentence report on you, the government correspondence.

23         Have you seen all of this, Mr. Kaiser, and

24  discussed it fully with your client?

25         MR. KAISER:  I have, Your Honor.

```
 1              THE COURT:  Mr. Savarese, have you had enough time
 2   to discuss these reports and the government's letter with
 3   Mr. Kaiser?
 4              THE DEFENDANT SAVARESE:  Yes, Your Honor.
 5              THE COURT:  Do you need any more time?
 6              THE DEFENDANT SAVARESE:  No.
 7              THE COURT:  In this case, I know there are
 8   disagreements between the government and the Probation
 9   Department with respect to the role that should be assigned
10   to Mr. Savarese, and that affects the guideline calculation.
11   There is also a question about giving him credit for time
12   that he has served in state custody, which I'm prepared to
13   do.  Depending on how I resolve the dispute about role, I
14   either do or do not need to depart to reach the 11E1C term
15   of incarceration provided here.
16              Let me ask, other than the dispute about role, are
17   there any other factual challenges to the report?
18              MR. KAISER:  There are none, Your Honor.
19              THE COURT:  Here again, I think that the Probation
20   Department is technically correct, but that the government,
21   in asking me to look at the totality of the activities of
22   this enterprise, is perhaps also correct in suggesting that
23   a 2 rather than 3 level enhancement would more accurately
24   reflect Mr. Savarese's role.  Whether I view this as a
25   different guideline or a departure itself, I'm prepared to
```

1    treat him as having the equivalent role of a 2 point

2    enhancement rather than 3.

3              Is that satisfactory to everybody?

4              MR. KAISER:  It is, Your Honor.

5              THE COURT:  I believe that means then that with a

6    total offense level of 33 and a criminal history category of

7    5, Mr. Savarese faces a 210 to 240 month term of

8    incarceration.  210 to 262, because though there is a 20

9    year maximum on the one, I could run it consecutively to

10   reach the guideline level.  So the guideline range is 210 to

11   262 months.

12             That would then be followed by a 2 to 3 year term

13   of supervised release, because this is simply the

14   racketeering charge, am I right?

15             MS. CORCELLA:  That's correct, Your Honor.

16             MR. KAISER:  Although I know he will be on

17   lifetime supervision from the state, Your Honor.

18             THE COURT:  But I'm just talking about the federal

19   guidelines.  He then faces a $17,500 to in excess of three

20   million dollar fine and a $50 order of special assessment.

21             Everybody agrees to that?

22             MR. KAISER:  Correct.

23             THE COURT:  I'm told that Mr. Savarese has as of

24   this month served 54 months of his state custody, is that

25   correct?

1              MR. KAISER:  Yes, Your Honor.

2              THE COURT:  That would mean that because he would

3     not otherwise receive credit for that on the federal

4     sentence, that I would treat his sentencing as really more

5     appropriately 156 months to 186 months.

6              Everyone agrees to that?

7              MS. CORCELLA:  I think you're capping it out at --

8              THE COURT:  You're right, I had done the 20 years

9     again.  It's 156 to 208 months.

10             Everyone agrees?

11             MR. KAISER:  Correct.

12             THE COURT:  The 174 month agreed upon 11E1C term

13    is within that guideline range, so I would not need to

14    depart.  I would say that even if this case were more

15    appropriately calculated as the Probation Department

16    recommended, I would be prepared to give the 7 month

17    downward departure for the reasons I've stated with respect

18    to other defendants, Mr. Savarese, which is that these pleas

19    by you and your codefendants avoided the need for multiple

20    complex trials and avoided the need for litigation in this

21    Court or other courts of complex issues about the conduct of

22    Gregory Scarpa, Senior and possibly agents of the F.B.I.

23             Having said all that, Mr. Kaiser, is there

24    anything more you'd like to say on behalf of Mr. Savarese?

25             MR. KAISER:  Nothing further, Your Honor, except

1    that just that we wish that you impose the 11E1C plea, that

2    you make the standard recommendation for housing in the

3    northeast at the conclusion of his at least 8 more years in

4    state custody.  Additionally, we note that the PSI also

5    recommends that it does not appear he has the ability to pay

6    a fine.

7                THE COURT:  Mr. Savarese, you don't have to say

8    anything, but if you'd like to be heard, I'd be pleased to

9    listen to you.

10               THE DEFENDANT SAVARESE:  Thank you.

11               THE COURT:  Ms. Corcella, anything else?

12               MS. CORCELLA:  No, Your Honor.

13               THE COURT:  Mr. Savarese, the 11E1C plea in your

14   case is the highest of the group of defendants I'm

15   sentencing this morning.  You face a term of 174 months in

16   jail.  This reflects both your serious criminal conduct on

17   the crime of conviction and your extraordinary criminal

18   history.  I don't know if anything will persuade you to

19   change the life you've led, but your are going to be almost

20   an old man by the time you get out of jail.  With whatever

21   time you have left, I hope that you'll decide that this

22   constant back and forth into jail is not what you want left

23   with the rest of your time.

24               I sentence you as agreed upon by the parties to

25   174 months in jail.  That will run concurrent with the

1    remainder of your state time.

2              MR. KAISER:  Your Honor, can I interject?  Can we

3    specify in the J and C the state sentence, number 7 of 92

4    from Richmond County.  Can that go in the J and C?

5              THE COURT:  Is that the one?

6              MS. CORCELLA:  Yes.  Whatever is in the plea

7    agreement.

8              THE COURT:  I don't have a copy of the plea

9    agreement, so if you provide that to Mr. Taveras, I'll note

10   it, because I think you're just trying to avoid any kind of

11   bureaucratic mix-up, Mr. Kaiser.

12             MR. KAISER:  Exactly, Your Honor.

13             THE COURT:  So I will put it on the judgement in

14   this case to try to avoid anything like that.  I impose a 3

15   year term of supervised release.  I will not impose a fine.

16   Mr. Savarese is going to be in jail for a long time and I

17   have no expectation that he could pay a fine.  I assess you

18   $50 because I'm required to do that by law.

19             Ms. Corcella, the same application?

20             MR. KAISER:  I think it's $100, Your Honor.

21             THE COURT:  I'm sorry, $100?  They've changed it,

22   but it's only one count.

23             MS. CORCELLA:  He just pled to one count.

24             THE COURT:  It's two predicate acts, but only one

25   count.

1          The one count you've moved to dismiss, and that's

2    granted.  Just make sure Mr. Taveras gets the docket number

3    that he needs for the state crime.

4          MR. KAISER:  Thank you, Your Honor.

5                    *  *  *  *  *  *  *  *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I certify that the foregoing is a correct transcript

19    from the electronic sound recording of the proceedings in

20    the above-entitled matter.

21

22

23

24

25    ELIZABETH BARRON                    August 19, 2011